[Civil No. 4300.   Filed April 7, 1941.]

[112 Pac. (2d) 207.]

W. ROY WAYLAND, I. A. McCABE and JOSEPH H. CONDREY, as Members of and Constituting the UNEMPLOYMENT COMPENSATION COMMISSION OF ARIZONA, Appellants, v. J. S. KLECK, Appellee.

Mr. Arthur M. Davis and Mr. Fred O. Wilson, for Appellants.

Mr. Thomas W. Glenn, for Appellee.

ROSS, J.—Plaintiff, J. S. Kleck, brought this action against defendants, members of the Unemployment Compensation Commission of Arizona, to recover contributions paid to the unemployment compensation fund, based on a percentage of the wages paid his employees for the years 1936, 1937, 1938 and the first three quarters of 1939, amounting to the sum of $2,269.-62, contending that he was engaged in agricultural labor during said time and therefore not liable for such contributions.

The court gave judgment for the plaintiff, and defendants appeal.

Under the provisions of the Unemployment Compensation Law of 1936 and amendments thereof (sections 56–1001 to 56–1022, Arizona Code, 1939), those employers engaged in agricultural labor are exempted from making contributions to such fund. Section 56–1019.

It appearing that appellee had in his service during such time three and more individuals, the only question for decision is whether such services should be classed as agricultural. The work he was engaged in

is described and enumerated in his complaint as follows:

"Clearing, grubbing, levelling, ditching, plowing, discing, dragging, bordering and generally preparing lands for and only for the planting of agricultural crops thereon,

"Dragging, sowing, broadcasting and planting seed on said agricultural lands for and only for the purpose of growing agricultural crops thereon and therefrom.

"Digging tanks, reservoirs and catch basins, and placing, forming and fashioning earthern dams for and only for the purpose of impounding water to be used for watering live stock.

"Operating mechanical agricultural implements and farm machinery for the purposes hereinabove enumerated.

"Repairing and servicing such mechanical agricultural implements and farm machinery in the field as well as in a shop on the ranch of the plaintiff maintained and operated for and only for that purpose.

"Operating trucks for and only for the purpose of transporting fuel oil, lubricants and repair parts for the servicing of such implements and machinery in the field.

"Maintaining a central office and keeping books of accounts in respect to such employees, their occupation and work performed wholly in the services hereinbefore enumerated."

He did this work for various farmers throughout Maricopa County and the state.

The Unemployment Compensation Law does not define "agricultural labor." However, the commission, on June 18, 1937, issued a regulation giving its definition of the term, claiming the right to do so under the authority conferred on it by section 56–1011 "to adopt . . . rules and regulations" for the administration of the act. Such definition reads:

"The term 'agricultural labor' includes all services performed:

138

"(1) by an employee on a farm in connection with the cultivation of the soil, the raising and harvesting of crops; the raising, feeding, management of livestock, poultry, and bees; which includes, among others: the spraying, pruning, fumigating, fertilizing, irrigating, and heating which may be necessary and incident thereto;

"(2) By an employee in connection with the drying, processing, packaging, transporting, and marketing of materials which are produced on the farm or articles produced from such materials, provided such drying, processing, packing, packaging, transporting, or marketing is carried on as an incident to ordinary farming operations as distinguished from manufacturing or commercial operations.

"The services hereinabove set forth do not constitute agricultural labor unless they are performed by an employee of the owner or tenant of the farm on which the materials in their raw or natural state were produced. Such services, however, do not constitute agricultural labor if they are carried on as an incident to manufacturing or commercial operations.

"As used herein the term 'farm' includes, among others, stock, dairy, poultry, fruit, and truck farms, plantations, ranches, ranges, orchards, and vineyards.

"Forestry and lumbering are not included within the exemption of agricultural labor."

Thus it is seen that the commission undertook to say by rule or regulation what is and what is not agricultural labor.

Our act is complementary to the federal Social Security Act and was adopted in consequence thereof. 42 U. S. C. A., § 901 et seq., sec. 1101 et seq., 49 U. S. Stat. pp. 635, 639. Other states have adopted similar acts and similar regulations thereunder. In fact, the state regulations are very much like the federal regulations adopted by the Commissioner of Internal Revenue for the administration of the Social Security Act.

Our regulations, subdivisions (1) and (2), correspond, in the subject treated, to subdivisions (a) and

(b) in the federal regulation and the regulations of other states. The first subdivision refers to one kind of labor, which is always agricultural, and the second subdivision refers to another kind of labor, which may or may not be so classed. In this subdivision the labor is used in processing things grown on a farm, also the packing, packaging, transportation or marketing the things grown or articles made therefrom. These services, if done for the owner or tenant of the farm on which the materials in their raw or natural state are produced and as an incident to the farming operation, as distinguished from manufacturing or commercial operations, are agricultural.

All these regulations in connection with these unemployment acts recognize that the harvested crops may, owing to the way they are handled, lose their agricultural character and become articles of commerce or manufacture, especially after the raw or natural material has been removed from the farm where grown.

The distinction is noticed by the court in *H. Duys & Co., Inc.,* v. *Tone,* 125 Conn. 300, 5 Atl. (2d) 23, 28, as follows:

"A farm laborer, as ordinarily understood, is one who labors upon a farm in raising crops or in doing general farm work. *Lowe* v. *Abrahamson,* 18 N. D. 182, 184, 119 N. W. 241, 19 L. R. A. (N. S.) 1039, 20 Ann. Cas. 355; 2 Am. Jur. 396. Agriculture, broadly defined, includes not only cultivation of the soil and its fruits, especially if in an area of such size and character as to be regarded as a farm, but also such processes or steps as are necessary and incident to the completion of products therefrom for consumption or market. 2 Am. Jur. 395; 3 C. J. S., Agriculture, § 1, p. 366; *Chudnov* v. *Board of Appeals,* 113 Conn. 49, 54, 154 Atl. 161. However, many activities connected with the preparation of farm products for use or sale which formerly were carried on upon the farm or in intimate connection with it, such as the making of but-

ter, cheese and cider have gradually become specialized and removed from the farm, and when this is done such work may properly be regarded as thereby becoming industrial in nature rather than agricultural in the common conception of that term. *Keeney* v. *Beasman, supra* [169 Md. 582, 182 Atl. 566, 103 A. L. R. 1515]; 1 New International Encyclopedia, 250.''

The question in *United States* v. *Turner Turpentine Company,* 5 Cir., 111 Fed. (2d) 400, 404, was as to whether the production of gum by the owner of trees from oleoresin by the scarification of living pine trees and its processing into spirits of turpentine and gum rosin was agricultural labor within the federal Social Security Act. It was determined that such labor was agricultural, the court saying:

'' . . . It is now a settled principle of statutory construction that Congress or a legislature in legislating with regard to an industry or activity, must be regarded as having had in mind the actual conditions to which the act will apply, that is, the needs and usages of such activity. When then, Congress in passing an act like the Social Security Act, uses, in laying down a broad general policy of exclusion, a term of as general import as 'agricultural labor', it must be considered that it used the term in a sense and intended it to have a meaning wide enough and broad enough to cover and embrace agricultural labor of any and every kind, as that term is understood in the various sections of the United States where the act operates. This does not mean of course, that a mere local custom which is in the face of the meaning of a general term used in an act, may be read into the act to vary its terms. It does mean however, that when a word or term intended to have general application in an activity as broad as agriculture, has a wide meaning, it must be interpreted broadly enough to embrace in it all the kinds and forms of agriculture practiced where it operates, that its generality reasonably extends to. Definitions of agriculture in standard texts and treatises and in decisions in these latter years, have had the widest content. . . . ''

See *Fromm Brothers* v. *United States, D. C.*, 35 Fed. Supp. 145. This is a very interesting case. It holds that the new industry of raising foxes for their fur is agricultural.

"Agriculture," says Webster's New International Dictionary, Second Edition, is

"The art or science of cultivating the ground, and raising and harvesting crops, often including also feeding, breeding, and management of livestock; tillage; husbandry; farming; in a broader sense, the science and art of the production of plants and animals useful to man, including to a variable extent the preparation of these products for man's use and their disposal by marketing or otherwise. In this broad use it includes farming, horticulture, forestry, dairying, sugar making, etc."

What plaintiff's employees were engaged in was largely the clearing and preparation of land for the planting of crops, getting the land in shape or condition, and the planting or sowing of the seed; the digging of ditches and fashioning of earth dams to impound water for watering stock. To do these things the employees operated farm machinery and implements and when these got out of repair they repaired them on the farm or in a shop maintained for that purpose. They used trucks to transport fuel oil, lubricants and repair parts. The plaintiff had a central office and kept books of account on his employees and their occupations. The evidence shows that the plaintiff at times used as many as ten or a dozen tractors in preparing the land and planting the seed, but, whether he used tractors or plows drawn by horses, it was agricultural labor. About the only thing plaintiff did not common among farmers was in the keeping of books of account, and we cannot see wherein that fact changed the character of the labor. What he was doing was not commercial, for he sold nothing. It was

not manufacturing, for he made no article out of the raw materials taken from or grown on the farm.

From any viewpoint, it seems to us, the plaintiff was not liable for the tax, since he and his employees were engaged in agricultural labor as defined by the defendant's regulations, and certainly under all of the decisions.

The judgment is affirmed.

LOCKWOOD, C. J., and McALISTER, J., concur.