[Civil No. 4537. Filed January 4, 1944.]

[144 Pac. (2d) 682.]

EMPLOYMENT SECURITY COMMISSION OF ARIZONA, DEAN A. SISK, ROBERT D. KENDALL and JOHN M. SAKRISON, as members of and constituting the Employment Security Commission of Arizona, Appellants, v. ARIZONA CITRUS GROWERS, a corporation, Appellee.

Mr. Arthur W. Davis, for Appellants.

Messrs. Ellinwood & Ross, Mr. Francis J. Ryley and Mr. George E. Wood, for Appellee.

UDALL, Superior Judge.—The question presented by this appeal is whether services rendered by cer-

tain employees of the Arizona Citrus Growers, a corporation, during the period in controversy (January 1, 1940, to June 16, 1941) were, as the law then stood, engaged in "agricultural labor" and therefore exempt from coverage under the Unemployment Compensation Law of 1936, as amended.

The appellee, the Arizona Citrus Growers, hereinafter referred to as the Association, is a corporation organized under the cooperative marketing laws of Arizona, Article 7, Section 49–701, *et seq.*, Arizona Code Annotated 1939. It is the usual nonprofit cooperative marketing association, without capital stock. It was created for the purpose of marketing the citrus products of its members. Only persons, firms or corporations engaged in growing citrus fruit may become members of the association. There is no membership fee and no dues are paid. Membership is limited to persons engaged in the growing of citrus fruit. The property rights and interests of each member in the association are equal. The members receive all the proceeds from sales of products after administrative costs are deducted. Insofar as the operations in question here are concerned, they were confined solely to handling the fruit of its members, although under its charter and by-laws it might buy or sell citrus fruit from or for other than its members where there was an insufficiency of its members' products to provide a continuity of service. The record discloses that the association had not dealt with any except its own 268 members who have their groves within a ten-mile radius of Phoenix where the packing house is located, and for whom nearly a million boxes of citrus fruit had been handled that season.

The Association was concededly subject to the payment of unemployment compensation benefits with respect to a portion of its employees and such con-

tributions have been regularly paid. It is interesting to note that at all times from the passage of the Unemployment Compensation Acts up to January 1, 1940, (the date the amendment to the Federal Act became effective) the Association recognized its liability under both the Federal and State laws and paid taxes on the wages of persons performing the same services as it now contends are exempt.

This action originated as a result of claims filed by certain employees of the Association for unemployment compensation benefits. The procedural steps outlined in Section 56–1006, Arizona Code Annotated 1939, were strictly followed. The deputy of the Commission found that these individuals were eligible to receive such benefits and approved their claims for payment. The Association appealed from this award on the grounds that these employees were engaged in picking or packing fresh citrus fruits and were therefore engaged in "agricultural labor" and consequently exempt from the provisions of the Unemployment Compensation Law. This appeal was heard by the Appeal Tribunal which took testimony and thereafter, by a majority vote, affirmed the ruling of the deputy. From this decision an appeal was taken to the Unemployment Compensation Commission and a further hearing, with additional testimony, was conducted, as a result of which the Commission unanimously affirmed the action of the Appeal Tribunal and ordered that benefits be paid. The Association then filed in the Superior Court of the State of Arizona, in and for the county of Maricopa, its Petition for Review of the Decision. The record before the Commission was thereupon transmitted to the Court below and after appearance and argument by counsel for both parties, the Court entered its judgment reversing the action of the Commission.

From this judgment the Commission alone has appealed to this Court.

Of the twelve original claimants, all of whom were parties in the proceedings below, but none of whom are appellants herein, all but one were engaged at the Association's plant in the manual work of grading, sorting, cleaning, wrapping and boxing fresh citrus fruits for the purpose of preparing the fruit for market. The other claimant was engaged in the work of picking citrus fruit from the trees belonging to members of the association. The Association hired the men, paid their wages and directed their work. None of the claimants were employed or controlled in any way by the growers themselves.

A brief recitation of the Federal and State legislation on unemployment compensation will be necessary in determining this appeal. The initial legislation on the subject matter was the adoption by the Federal Congress of the original Social Security Act of 1935 (42 U. S. C. A. §§ 501 *et seq.*, 901 *et seq.*, 49 U. S. Stat. pp. 626, 635), and by its terms "agricultural labor" was denied the benefits thereof. In February of 1936 the Commissioner of Internal Revenue issued comprehensive regulation No. 90, which defined the term "agricultural labor" as used in the Federal Statute. On February 10, 1939, Congress enacted *into* law the Internal Revenue Code, 53 Stat. 1, 26 U. S. C. A. Int. Rev. Code, § 1 *et seq.*, adopting the 1935 Act without change and with the knowledge of the definition contained in Regulation 90. On August 10, 1939, Congress amended the Law (53 Stat. 187, 1392, 26 U. S. C. A. Int. Rev. Code § 1607) and for the first time it defined the term "agricultural labor." This law became effective January 1, 1940.

Along with a goodly number of the other states, the Twelfth Legislature of Arizona, in special session assembled, was quick to take advantage of this

beneficent Federal Law covering unemployment compensation. On December 2, 1936, it passed as an emergency measure what is known as the "Unemployment Compensation Law of 1936" (Chap. 13, 1st S. S., now Article 10, c. 56 of the 1939 Arizona Code Annotated). Here again in general terms only "Agricultural Labor" was exempted from the provisions of the State law. Some amendments to the original Act were made at the regular Session of the Thirteenth Legislature (Chap. 68, 1937 S. L.) but the provision as to "agricultural labor" remained the same. The Act (Sec. 56–1011) authorized the Commission "to adopt . . . rules and regulations" for the administration of the Law. Pursuant to this authorization the Commission, on June 18, 1937, adopted its Rule I, the validity and interpretation of which will be largely determinative of this appeal. This Rule I is substantially identical with Regulation No. 90, *supra,* adopted by the Internal Revenue Department. The Law remained in this condition until the enactment of Chap. 124, Laws of 1941, which became effective on June 16, 1941; this is known as the Employment Security Act of Arizona. Herein for the first time the Legislature defined the term "agricultural labor" (Sec. 56–1002), which is in the same identical terms as the August 10, 1939, amendment to the Federal Law. The declared purpose of all these acts "was to protect employees from the serious consequences of unemployment" and the courts have universally liberally construed their provisions.

It seems crystal clear that Arizona was endeavoring to and did pattern its law, insofar as the controversial matters here are concerned, after the Federal enactment; that conclusion seems inescapable. That the definition of "agricultural labor" as contained in the Employment Security Act of Arizona

differs greatly from Rule I adopted in 1937 is best evidenced by the fact that both appellant and appellee agree that subsequent to June 16, 1941, there is no liability on the part of the Association for payment of contributions on wages of these claimants, or others similarly employed, to the unemployment compensation fund.

The appellants, Employment Security Commission of Arizona, and its individual members, who are herein referred to as the Commission, make but one assignment of error, which reads:

"The Court erred as a matter of law in rendering judgment that services performed by employees of a corporation organized under the cooperative marketing statute of Arizona, in picking and packing fresh citrus fruits are agricultural labor and therefore exempt from the payment of unemployment compensation contributions under the provision of the Unemployment Compensation Law of 1936, as amended, and under the Rules and Regulations adopted pursuant thereto."

The seven propositions of law upon which the foregoing assignment is based may be summarized by saying that it is their contention: That Rule I is a valid rule for the purpose of defining agricultural labor and was properly adopted by the Commission under the authority conferred upon it by the Legislature. That said rule was in full force and effect during the period in controversy and is entitled to the same force as law. That the classification of labor made in the Rule was proper in carrying out the intent of the law. That the Arizona Employment Security Act of 1941 defining "agricultural labor" does not constitute a retroactive declaration as to the meaning of that term as used in the original enactment. That labor performed for a cooperative corporation constitutes services for such corporate

entity and not for the individual members of such corporation, and that the services performed by claimants were commercial in nature.

From the record we do not have the benefit of an expression from the learned trial Judge as to the basis of his decision, which as a matter of law is of course not necessary, but the Association seeks to sustain the judgment on the grounds, (1) that Rule I is not a valid exercise of the authority conferred on the Commission by the Legislature, (2) that the picking and packing of fresh citrus fruits by employees of the Association constitutes "agricultural labor" even under Rule I.

We shall first consider the validity of Rule I: The rule itself is set out at length in the case of *Wayland* v. *Kleck*, 57 Ariz. 135, 112 Pac. (2d) 207, 208, and hence will not be incorporated herein. This leading Arizona case also involved the interpretation of the term "agricultural labor" as used in the Unemployment Compensation Law of 1936. Judge Ross, speaking for this Court, clearly pointed out that "our act is complementary to the Federal Social Security Act and was adopted in consequence thereof." Apparently the validity of Rule I was not specifically raised in that case and hence the Court had no occasion to pass directly upon the question here presented. However, the rule was treated as a valid regulation in determining that case. The Court commented upon the fact that "the state regulations are very much like the federal regulations" and that "subdivisions (1) and (2) correspond, in the subject treated, to subdivisions (a) and (b) of the federal regulation."

██ Where the Legislature having by its enactments declared policies and fixed primary standards, as it did in the Unemployment Compensation Law, there can be no question but what it may validly

confer on administrative officers power to "fill up the details" by prescribing rules and regulations to promote the spirit and purpose of the legislation and its complete operation. We feel that the instant regulation does not subvert the statute. We think the promulgated regulation is in keeping with the clear intent of the enactment. Practically all of the courts that have been called upon to pass upon regulations identical with or very similar to Rule I have upheld the same as proper interpretations of the statutes involved. *H. Duys & Co., Inc., et al.* v. *Tone,* 125 Conn. 300, 5 Atl. (2d) 23; *Christgua* v. *Woodlawn Cemetery Ass'n,* 208 Minn. 263, 293 N. W. 619; *Park Floral Co.* v. *Industrial Commission,* 104 Colo. 350, 91 Pac. (2d) 492; *Chester C. Fosgate Co.* v. *United States,* 5 Cir., 125 Fed. (2d) 775, writ of *certiorari* denied in 1942, 317 U. S. 639, 63 Sup. Ct. 31, 87 L. Ed. 515; *Great Western Mushroom Co.* v. *Industrial Comm.,* 103 Colo. 39, 82 Pac. (2d) 751.

The only case, which has been called to our attention, holding to the contrary, and striking down a similar regulation, is *California E. Comm.* v. *Butte County Rice G. Ass'n,* (Cal. App.), 138 Pac. (2d) 347. It is evident that this decision was largely influenced by the fact that the regulation as interpreted by the Commission conflicted with other statutory provisions relative to farmers cooperative associations. We therefore hold that Rule I is a valid exercise of authority conferred upon the Commission and constitutes a reasonable classification of "agricultural labor."

The Association urges, however, that when the Arizona Legislature in 1941 adopted a specific amendment defining the term "agricultural labor" this Court must accept the definition as legislative construction of the term as originally used in the 1936 Act. In support thereof it cites *Moore* v. *Pleasant*

*Hasler Construction Company*, 51 Ariz. 40, 76 Pac. (2d) 225, 228:

"It is a rule of statutory construction that where, in the enactment of a law, the legislature employs in a subsequent clause of the same act or in later legislation on the same subject language clarifying a doubtful expression theretofore used, the court should give that language the meaning the legislature intended . . . ."

While we adhere to the principle therein stated, we do not consider it applicable to the instant case for the reason that clear indications of the legislative intent surround the original enactment. Therefore recourse to subsequent legislation is not in order. The close relationship of the Federal and complementary State laws and regulations impels this conclusion.

 A statute will be construed as having a prospective operation only, unless it plainly indicates an intent that it shall operate retrospectively. *Cummings v. Rosenberg*, 12 Ariz. 327, 100 Pac. 810, *Bartlett v. MacDonald*, 17 Ariz. 194, 149 Pac. 752; see also Sec. 1–101, Arizona Code Annotated 1939.

In the Washington case of *Cowiche Growers* v. *Bates*, 10 Wash. (2d) 585, 117 Pac. (2d) 624, 632, that Court was confronted with exactly the same contention as that advanced by the Association in this case. In disposing of it that Court said:

"Appellants under subdivision II of their argument, contend that the 1941 act (Laws 1941, chap. 253) is a binding interpretation by the legislature as to what was meant by the phrase 'agricultural labor' in the 1937 act. In the 1941 act, at page 920, there is described in detail what services shall be considered as 'agricultural labor.' Subdivision (2) on page 920 describes services such as here involved. We agree with the rule contended for by appellants, that where the legislature has placed its own con-

struction upon a prior enactment, the courts are not at liberty to speculate upon legislative intent.

"However, we cannot agree that the 1941 act indicates what the legislature meant by the term 'agricultural labor' in either the 1937 or 1939 acts, nor do we believe the 1941 act is applicable here. We agree with the trial court that the 1941 act is purely an amendment of the 1939 act, and cannot be considered as interpretative or explanatory of either the 1937 or 1939 acts. (Citing case.) We are rather of the opinion the 1941 amendment was enacted because of conditions called to the attention of the legislature, which it did not have in mind at the time the former acts were passed. We are of the further opinion that the 1941 act is not available to appellants, for the reason that it did not become effective until June 12, 1941. This act does not purport to be retroactive, and cannot therefore be operative before its effective date."

As applied to the Federal Act this same argument was advanced in the case of *Chester Fosgate Company v. United States, supra* [125 Fed. (2d) 777], and a similar disposition made of it in these words, viz.:

"The Company asserts that the amendment of the Social Security Act of August 10, 1939, states the meaning of 'agricultural labor' which should here be applied, it being a mere clarification of the original Act, .... A careful examination of the legislation and its history leads us to say that so far as it relates to the present case it was expressly intended to change existing law from a date fixed in the future and was not declaratory of the old law and operative retroactively."

We adopt the reasoning of these cases on this point and hold that the amendment of the Federal Social Security Law of January 1, 1940, did not amend the Arizona Unemployment Compensation Law, and also that the amendment to the Arizona

Law, effective on June 16, 1941, operated prospectively only and not retrospectively. It follows that until June 16, 1941, Rule I was the only effective definition of the term "agricultural labor" under the Arizona Unemployment Compensation Law and the Association's rights must be determined by is application.

We are aware that the pursuit of definitions of "agricultural laborers" through the cases leads to confusion because generally the case definitions have grown out of special statutory phraseology, or out of judicial effort to conform to legislative intent. The employees referred to in the *Wayland* v. *Kleck* case, *supra,* in effect were exempted because they came within the first subdivision of Rule I, which Judge Ross pointed out is always agricultural, "since he and his employees were engaged in agricultural labor as defined by the defendant's regulations and certainly under all of the decisions." The claimants in the instant case were engaged in the type of labor referred to in the second subdivision of Rule I, which, as stated in the foregoing opinion, may or may not be agricultural labor. It is evident that in the *Wayland* v. *Kleck* case, *supra,* that this Court in effect construed the third paragraph of Rule I, which reads:

"The services hereinabove set forth do not constitute agricultural labor unless they are performed by an employee of the owner or tenant of the farm on which the materials in their raw or natural state were produced. Such services, however, do not constitute agricultural labor if they are carried on as an incident to manufacturing or commercial operations.",

as a part and parcel of subdivision 2, and its terms applying only to the services set out in subdivision 2, as all other regulatory bodies, both federal and

state, that adopted this type of regulation have done. When thus considered it harmonizes the rulings in the case last cited with the provisions of Rule I and with the decision reached in the instant case. To the same effect, see the ruling in *California Employment Commission* v. *Bowden,* 52 Cal. App. (2d) Supp. 841, 126 Pac. (2d) 972, 979, *Stuart* v. *Kleck,* 9 Cir., 129 Fed. (2d) 400.

As stated in one of the cases cited in *North Whittier Heights C. Ass'n* v. *National Labor Relations Board, infra* [109 Fed.. (2d) 81]:

"As soon as the fruit is delivered by the growers to the plaintiff for processing, grading, packing, and marketing, then the exemption ceases. The plaintiffs engaged in processing, grading, and packing and marketing the fruits are engaged in industry, and are, therefore, subject to the provisions of the act and are not exempt as being engaged in agricultural labor."

And in the case of *Cowiche Growers* v. *Bates, supra,* it is stated:

"Industrial activity commonly means the treatment or processing of raw products in factories. When the product of the soil leaves the farmer, as such, and enters a factory for processing and marketing it has entered upon the status of industry."

■ We conclude that the claimants who worked in the Association's packing house are not agricultural laborers, as that term is defined in Rule I, subdivision 2, which, as heretofore, pointed out, is the only yardstick to be applied in this case, and are therefore not exempt from the operation of the act. Their work was not carried on as an incident to ordinary farming operations, but was rather commercial in its nature.

Rule I, subdivision 2, provides that labor such as that performed by the claimants herein "does not

constitute agricultural labor unless it is performed by *an employee of the owner or tenant of the farm on which the materials in their raw or natural state were produced.*" Applying this standard to the facts as heretofore set forth, it is evident that the services in the present case were not performed by an employee of the "owner or tenant" unless, as contended by the Appellee, that this phrase be so construed as to include employees of a cooperative marketing association as the alter ego of the owner or tenant. The Colorado Supreme Court in the case of *Industrial Comm.* v. *United Fruit Growers Ass'n,* 106 Colo. 223, 103 Pac. (2d) 15, interpreted their similar regulation as exempting employees of the cooperative associations from the operation of the law as being "agricultural laborers." A careful reading of this case, which stands alone, will disclose that other statutory provisions as to cooperatives doubtless influenced the conclusion reached. Furthermore, as was pointed out by the Washington Court in the case of *Cowiche Growers* v. *Bates, supra,* the Colorado Commission had promulgated a regulation defining the term "agricultural labor," which regulation defined the term as it was defined by our legislature in 1941, to include services such as herein performed. It would seem to us also that the Colorado Court completely ignored the separate corporate entity of the cooperative.

■ The Commission takes the position that the Association is a corporation which is a complete legal entity, separate and apart from its members, in exactly the same manner and to the same extent as any other ordinary corporation. Fletcher's Cyclopedia of Corporations, Vol. 1, page 25, where, at page 90, the author states: " . . . cooperative corporations . . . are just as distinct an entity as are other private corporations." To the same effect are

the holdings in *Rutledge Co-Operative Ass'n* v. *Baughman,* 153 Md. 297, 138 Atl. 29, 56 A. L. R. 1042; and *Maryland & Virginia Milk Producers' Association, Inc.,* v. *District of Columbia,* 73 App. D. C. 399, 119 Fed. (2d) 787.

In the following well reasoned cases this precise question was raised and in each instance the Court held that the cooperatives were separate entities and that such associations could not claim exemption on the ground that they were organized for the exclusive benefit of their members and not for profit. *Cowiche Growers* v. *Bates, supra,* and *North Whittier Heights C. Ass'n* v. *National Labor Relations Board,* 9 Cir., 109 Fed. (2d) 76. While the latter case arose in connection with the National Labor Relations Act, 29 U. S. C. A. § 151 *et seq.,* the fundamental principles stated in the excerpt quoted below applies with equal force to the instant case; that court said:

"Petitioner argues that if each member of the non-profit cooperative corporation that runs the packing house were to personally hire and direct those doing his own packing and sorting, the work would be agricultural; and his employees would be agricultural laborers; that it follows, therefore, that in the case of the same members acting under a single organization to accomplish the same results, there can be no change in the nature of the work nor in the status of the persons doing it. The conclusion does not follow. *The factual change in the manner of accomplishing the same work is exactly what does change the status of those doing it.* The premise laid down by petitioner in this phase of its argument is not, however, the exact situation facing us. The packing house activity is much more than the mere treatment of the product. When it reaches the packing house it is then in the practical control of a great selling organization which accounts to the

individual farmer under the terms of the statute law and its own by-laws.''

In the case of *O'Neil* v. *United Producers & Consumers Co-Op.*, 57 Ariz. 295, 113 Pac. (2d) 645, this Court by analogy has properly aligned itself with those states holding that cooperatives have a separate legal entity apart from that of its members; otherwise a sales tax could not have been sustained in that case.

We hold that during the period in controversy the services performed by the claimants in question were performed for a separate corporate entity and not for the owner or tenant of a farm on which the crops were grown. That for the period January 1, 1940, to June 16, 1941, the services performed by claimants did not constitute ''agricultural labor'' under the Unemployment Compensation Law then effective, and hence were not exempt from the operation of the law.

The judgment of the lower Court is reversed and the opinion of the Commission as rendered on October 25, 1941, is sustained in all respects.

ROSS and STANFORD, JJ., concur.

McALISTER, C. J., being ill, the Honorable LEVI S. UDALL, Judge of the Superior Court of Apache County, was called to sit in his stead.