[No. 5712.]

## PARK v. PARK, EXECUTOR.

1. **Water Rights — Different Priorities Under the Same Ditch**—The same consumer may be entitled to two or more priorities to the use of water from one ditch, and there may be different priorities belonging to different consumers.—(354)

2. **Adjudication of Priorities**—The relative rights of those entitled to use the waters of a ditch can not be litigated in the statutory proceeding for adjudicating the priorities of the water district.—(354)

3. **Adjudication of Priorities—Statement of Claim Not an Estoppel**—Where there are several tenants in common of a water right, and each files a claim to the same ditch, their rights inter se are not controlled by the statement of claim made by either, at variance with the actual division and use of the water, at all times prior to the institution of the proceeding and for many years thereafter.—(354, 355)

4. **Notice—Circumstances Putting on Inquiry**—A decree awarding priorities to the waters of a stream to three parties, but which ignores the claim made by one of them, awards to another a greater volume, and from an earlier date, than claimed by him, and expressly disclaims the adjustment of their rights as between themselves, calls for investigation by one proposing to purchase the rights of one of them, as to the foundation of the right, to wit, the actual use and enjoyment of the water. —(355)

5. **Statute of Frauds — Verbal Agreement — Part Performance**—A verbal agreement for the division of the waters of a ditch is taken out of the statute of frauds by an open and notorious enjoyment of the water for years in accordance with the agreement.—(356)

*Appeal from Rio Grande District Court*—Hon. CHARLES C. HOLBROOK, Judge.

Mr. JESSE C. WILEY, and Mr. JAMES P. VEERKAMP, for appellants.

Messrs. RICHARDSON & HAWKINS, for appellee.

Mr. JUSTICE HILL delivered the opinion of the court:

This action was brought in the court below by William S. Park, now deceased, Alonzo Park, executor, being substituted as appellee, against Phoebe Park, Walter L. Park, James G. Park, Manuel Martinez, Miguel Martinez and Juan Louis Montoya, appellants, and Theophile Benjosky, defendants, to obtain a decree defining his interest in and to certain waters in what is called Pinos Creek, by virtue of a certain irrigation ditch and the waters adjudicated thereto, called Montoya Ditches Nos. 1, 2 and 5, and priorities therefor, No. 4 for 3.8 cubic feet per second, dating from March 10, 1867; and No. 168, for 3.2 cubic feet per second, dating from May 31, 1879; and quieting his title to his interest therein, and to restrain the defendants from interfering with plain-

tiff's right in so much of said waters as is owned by him.

It appears, from the evidence, that the appellee is the grantee of one Louis Montoya, who settled upon the lands now owned by the appellee about 1879, which land had been settled upon by his grantors prior to the construction of original Montoya Ditch No. 1, in 1867, and that the then owners of the land participated in the construction of the original ditch, the ranch now owned by the appellants being owned by A. E. Montoya in 1867, who likewise participated in the construction of the original canal.

A third ranch was owned by the predecessors of the defendant, Theophile Benjosky, who likewise participated in the original construction of Montoya Ditch No. 1, and we think the evidence shows the original ditch was constructed for the irrigation of a part of each of these ranches. From the time of the construction of the original canal, the owners of all three of the ranches participated in the use of the waters from Montoya Ditch No. 1; the exact division in the early days is not clear from the evidence. Thereafter, by enlargement of the area irrigated in 1868, this ditch was enlarged, and a branch or lateral taken therefrom, called Montoya Ditch No. 2; and thereafter, during the year 1879, further enlargement of the area irrigated was made, and the first ditch again enlarged, and an extension, or another branch, called Montoya Ditch No. 5, was constructed by Louis Montoya; during all of which period, from 1867 until 1889, the waters appear to have been used in about equal parts upon the three ranches.

In 1889, proceedings were instituted in the district court, under the statute, for the adjudication in this water district, including this creek, in which proceedings A. E. Montoya filed two statements of

claim for this ditch, the first being for 9⅓ cubic feet of water per second for Montoya Ditch No. 1, as of date March 15, 1867; the second being for Montoya Ditch No. 2, stating therein the same, being an enlargement of Montoya Ditch No. 1, for 1½ cubic feet of water per second, as of date March 15, 1868.

Theophile Benjosky filed his statement of claim for this same Montoya Ditch No. 1, for 9⅓ cubic feet per second of time, as of date March 15, 1867, while Louis Montoya filed his statement of claim, stating therein the same, being an enlargement of a portion of Montoya Ditch No. 1, and for Montoya Ditch No. 5 for 2 cubic feet of water per second, as of date May 8, 1881.

A. E. Montoya and Louis Montoya were brothers, and it appears that, long prior to this adjudication, a portion of the lands of both had been irrigated with the waters belonging to the earliest appropriation, and they had been using the water belonging to the two brothers in equal proportions; that, at the time of the adjudication, they made an agreement, in order to avoid a conflict as to the evidence, or any contention as to the amount each was entitled to, that A. E. Montoya should make filing and prove up (as they termed it) upon the earlier, or '67 water, and that Louis Montoya should make filing upon the '79 or '81 water (as they termed it), and make proof thereof by virtue of the enlargement of Montoya Ditch No. 1, and construction of ditch or lateral No. 5, but it was agreed they would each thereafter continue to use the water as before, equally. As to just why they made separate filings, or other reasons for so making them, or as to which one of the parties, if either, surrendered the greater right by the agreement, is immaterial to a decision in this case. Had each made a claim to the earlier water, it might have been that a dispute would or could

have arisen as to the amounts each of their lands was entitled to, and this manner was agreed upon with the understanding that thereafter the water should be owned equally, half and half, as to all waters thus secured by the two brothers; and proof was submitted accordingly, upon which the court ultimately issued a final decree, to a certain extent ignoring all the statements of claim, in which decree it is stated:

" *   *   *   The Montoya ditches Nos. 1, 2 and 5, is entitled to Construction Priority No. 4 and to Appropriation Priority Nos. 4 and 168;

"That the claimants are A. E. Montoya, Theophile Benjoosky and Louis Montoya

" *   *   *   entitled thereto   *   *   *   by virtue of the appropriation of water thereby made, the amount of water as of priority No. and date as follows, to wit:  By original construction, App. Priority No. 4, March 10th, 1867, 3.8 cu. ft. per second of time.

"By further appropriation of water:   App. Priority No. 168, May 31st, 1879, 3.2 cu. ft. per second of time,"

in which it will be noted A. E. Montoya's second statement is ignored entirely, no award being made therefor, the first appropriation for the entire ditch being limited to 3.8 cubic feet, the second being for 3.2 cubic feet dating from May 31, 1879, being for a greater amount and an earlier date than that claimed in the statement of Louis Montoya.

After this adjudication in 1889, the parties continued to use the water the same as formerly, and, in harmony with this understanding, about one-half upon the lands of each of the brothers, being two-thirds of the entire water of all decrees, the other third being used by Benjosky upon his lands until the year 1903, when the appellants, Parks, had purchased the greater portion of the lands of A. E.

Montoya, and which were conveyed to them by deed which included all waters appertaining or belonging thereto. . The other appellants, being heirs of said A. E. Montoya, and the appellees, had succeeded to the interest of Louis Montoya by the purchase of his land; the deed including all water appertaining or belonging thereto, when it appears a shortage arose, and the appellants' lands being above that of the appellees, upon the line of the ditch, laid claim to all the '67 water with the exceptions of a very small portion conceded by them to belong to Benjosky, and proceeded to dam up the canal, and appropriate the same to their own use under the claim that, as the successors of A. E. Montoya, they were lawfully entitled to the same as the owners thereof.

In the trial to the court without a jury, a general finding of facts was made in favor of the plaintiff (appellee here), and a further specific finding was made that Montoya Ditches Nos. 2 and 5 are simply laterals of Montoya Ditch No. 1, and that the water decreed to Montoya Ditches Nos. 2 and 5 are derived through the headgate of Montoya Ditch No. 1, and are in fact priorities of Montoya Ditch No. 1; that the lands now owned and irrigated by the plaintiff (appellee here) from the waters taken through the headgate of Montoya Ditch No. 1, the lands owned by the defendant, Theophile Benjosky, and irrigated by the water taken through said headgate, and the lands owned by the other defendants in this case (appellants here), grantees of A. E. Montoya, together with his heirs, are entitled to the waters flowing through the headgate of Montoya Ditch No. 1, in equal parts; to the plaintiff an undivided one-third, to the defendant, Benjosky, an undivided one-third, and to the grantees and heirs of A. E. Montoya (appellants here), an undivided one-third, and entered judgment accordingly. From

which the appellants appeal, claiming, in substance, that the decree is unsupported by the evidence and the law applicable to this case.

We think the evidence fully sustains the findings of fact made by the lower court above indicated, and unless it can be held that the statement of claim in the original adjudication filed by Louis Montoya can be held to have estopped him and his grantors from making any claim to the 1867 waters; the judgment of the district court should be affirmed; and in this, under the conditions above stated, we do not think the statement is controlling, for the reason the evidence shows the three ranches were entitled to a certain portion of the earlier water, and that it had originally been constructed for, and thus been used at times upon all three, from the year 1867 down to and including the year 1889, at the time of the institution of the adjudication proceedings, without any serious contention among the owners thereof.

The evidence further shows the decree secured for this ditch was not in conformity with the statements of claim made by the three owners thereof, in this, that the second statement of claim made by A. E. Montoya for this ditch was not awarded anything, and the statement of claim by Louis Montoya was for two cubic feet of water as of date May 8, 1881, while the second priority for the ditch was for 3.2 cubic feet as of date May 31, 1879. It further states the claimants are A. E. Montoya, Theophile Benjosky and Louis Montoya, not attempting to define the ownership of the different amount of each; in fact, the decree expressly provides therein as follows:

"Second: No part of this decree shall be taken; deemed or held as affecting, in any manner; any question or claim of right between the owners or claimants of any such ditch, * * * as between

themselves, whether as part owners, or shareholders therein, or as stockholders in any corporation * * * ; nor shall it affect the rights, interests or claims of any consumer of water for irrigation, * * * whether as part owners, * * * or as purchaser of water therefrom, as against the rights, interest or claim of any other party or parties interested, or claiming an interest or right in or to such ditch, * * * · as owner, lessee, or part owner thereto * * * ; neither shall it affect any claim of priority made or resisted as between parties using water for said purposes, from the same appropriation in any ditch, canal or reservoir, as to such water, excepting as hereinafter designated.''

And we find no exception following this paragraph in the decree covering the question in controversy, and the decree in this respect appears to be in harmony with section 2408, Mills' Ann. Stats.

That the same irrigating ditch may have two or more priorities belonging to the same party, or to different parties, is not an open question in this state.—*Thomas v. Guiraud et al.,* 6 Colo. 530; *Rominger v. Squires,* 9 Colo. 327; *Fuller v. Swan River Placer Min. Co.,* 12 Colo. 12; *Farmers' High Line C. & R. Co. v. Southworth,* 13 Colo. 111; *Nichols v. McIntosh,* 19 Colo. 22.

Likewise, that the question of the title of the sundry owners and users of the water covered by the priorities awarded to the same ditch cannot be litigated or settled in the adjudication proceedings, is well settled in this state.—*Putnam v. Curtis et al.,* 7 C. A. 437; *Oppenlander et al. v. Left Hand Ditch Co. et al.,* 18 Colo. 142; *Hallet v. Carpenter et al.,* 37 Colo. 30; *Evans v. Swan et al.,* 38 Colo. 92; *O'Neil et al. v. The Fort Lyon Canal Co. et al.,* 39 Colo. 487.

Hence, we cannot agree with counsel for appellants that the former decree was *res judicata* as to

the ownership of the priorities of the main ditch, as between the original appropriators thereof or their grantees.

Neither do we think the order of their names therein indicates anything; it states all three are the claimants for this water. Besides, the statute further provides that the statement of claim required may be made by any one of the owners.—Mills' Ann. Stats., § 2403; *Putnam v. Curtis,* 7 C. A. 441.

The contention made that appellants (Parks) were innocent purchasers without notice is not well taken. At the time of their purchase, all the water under both decrees was being used upon all three of the farms, and had been thus used since the rendition of the decree for about thirteen years, as it had prior to the date of the decree. This decree states it was claimed by all three, and it expressly disclaimed any intention of deciding the question of the ownership between them. If we look to the statements of claim made by each, we find the decree is not in harmony with any of them, and reasonable diligence would call for the further investigation looking to the foundation of title to any priority, namely, the actual application of the water to the land for a beneficial use, coupled with the intent to so appropriate it and thus secure title, and we think, as was stated in the case of *McLure et al. v. Koen,* 25 Colo. 284 (waiving the question of the original filings):

"The open and notorious possession and user of water from an irrigation canal through lateral ditches is constructive notice to a purchaser of the rights of the party so in possession and using the water."

We are also of the opinion that, if it could be held that Louis Montoya abandoned or waived his right to any of the earlier water by the agreement with his brother or by himself making his statement

of claim for the later water only, the agreement so entered into with his brother that he was to have half of all waters secured by both, followed by his open and notorious possession and use of the same for over thirteen years thereafter for the irrigation of his lands, was sufficient to vest the title therein in him, and to cause it to go to his grantees with his land under a · proper conveyance therefor. Oral agreements concerning priorities and title to water rights followed with its change of possession and application by the claimant have heretofore been held valid by this court, also that part performance will take it out of the statute of frauds and equity will enforce the right thus acquired.—*Schilling et al. v. Rominger,* 4 Colo. 104; *McLure v. Koen,* 25 Colo. 284.

For the reasons stated, the judgment is affirmed.                                                    *Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE GABBERT concur.