No. 14,295.

GREAT WESTERN MUSHROOM COMPANY *v.* INDUSTRIAL COMMISSION.
(82 P. [2d] 751)

Decided July 11, 1938.   Rehearing denied September 19, 1938.

Messrs. GARWOOD & GARWOOD, for plaintiff in error.

Mr. Byron G. Rogers, Attorney General, Mr. Walter F. Scherer, Assistant, for defendant in error.

*En Banc.*

Mr. Justice Hilliard delivered the opinion of the court.

An action by the Industrial Commission of Colorado against the Great Western Mushroom Company, a corporation, to recover unemployment compensation contributions based upon wages the company pays to its employees. The claim is founded upon the provisions of chapter 2, third extraordinary session 1936, chapter 167A, '37 Supp. '35 C. S. A., concerning unemployment compensation. The company's position is that it is exempt from the provisions of the act because its employees are engaged in "agricultural labor." §19(4)(D), p. 54. Judgment entered against the company in a sum not questioned as to amount.

In the company's operations mushrooms are grown in beds within sheds, where temperature and humidity are controlled; and, although the place where they are grown is called a "farm," it is not, as presently we shall see, a farm as that term ordinarily is employed. The area required is relatively small. The company here operates two such mushroom plants, one within, and one without, but near, Denver. It so employs its facilities and times its plantings that it gathers and markets mushrooms every day. In a word, the crop is not seasonal. The company's entire product is processed and packaged on the premises where the mushrooms are grown. In growing, gathering, packaging and marketing its mushrooms the company employs regularly from sixty to seventy-five people. Its labor turnover is not excessive, or, otherwise stated, its workers reasonably may expect steady employment.

The question is whether the company's employees are engaged in what may be said to be "agricultural labor."

Section 2 of the act reads: "As a guide to the interpretation and application of this Act, the public policy of this State is declared to be as follows: Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this State. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. The achievement of social security requires protection against this greatest hazard of our economic life. This can be provided by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The legislature, therefore, declares that in its considered judgment the public good, and the general welfare of the citizens of this State require the enactment of this measure, under the police powers of the State, for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own." Clearly, we think, the legislature intended that in enterprises where labor employment is expected to be fairly stable, but in the course of which hazards of unemployment to the deserving are always present, provision should be made for systematic accumulation of funds for their benefit. The provision of the law which we have quoted emphasizes our duty to interpret the enactment in the light of modern conception of economic justice.

Agriculture, in its "common and appropriate sense * * * is used to signify that species of cultivation which is intended to raise grain and other field crops for man and beast." *Simons v. Lovell,* 7 Heisk. (Tenn.) 510. See 2 C. J. 988, §1, where agriculture is defined as the "art or science of cultivating the ground, especially

in fields or large quantities." In the construction of statutes the spirit and intent must prevail. *Heitzman v. Bank*, 83 Colo. 476, 266 Pac. 213. In the present case, by authority of section 11(a) of the act, the commission adopted rules and regulations, in the course of which it declared that unless the "processing, packing, packaging, transportation, or marketing is carried on as an incident to ordinary farming operations," the labor employed is not agricultural labor. We cannot think the promulgated regulation is other than in keeping with the clear intent of the enactment. The never ceasing output of the company's plants or farms, and the year around need of the same labor, distinguish its activity from that of the ordinary farmer. The farmer's crops are seasonal, he employs few laborers, and usually for relatively short periods. It is such labor, as we perceive, that the legislature intended to exclude from the operation of the law. A definition by the United States treasury department, found in the Internal Revenue Bulletin of December 13, 1937, page 34, cited by the company's counsel to the effect that, "Since the labor performed by employees in the growing of vegetables is classified as 'agriculture labor,' services performed in the growing of mushrooms should in general be so classified," standing alone would seem applicable here; but, the Bureau adds, "provided such labor is performed on a farm in the ordinarily accepted sense of that word." We are disposed to the view of the learned trial court, "That the labor involved in this particular business of the defendant is not agricultural labor within the meaning of the act involved here, but is labor in a commercial enterprise."

Let the judgment be affirmed.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE BOUCK dissent.