WILSON et al. v. OKLAHOMA EMPLOYMENT SECURITY COMMISSION.

No. 34065. April 17, 1951.
Rehearing Denied May 22, 1951.

*231 P. 2d 664.*

502

Swank & Swank, Stillwater, for plaintiffs in error.

Burton Duncan and Gerald S. Tebbe, Oklahoma City, for defendant in error.

LUTTRELL, V.C.J. This is an appeal from a judgment affirming an order of the Oklahoma Employment Security Commission, assessing security contributions against the plaintiffs, a partnership, doing business as Stillwater Hatchery. The sole question presented is whether the business in which plaintiffs are engaged comes within the exemption stated in 40 O.S. 1941 §229, subd. (f) (6) (a). That subdivision reads as follows:

"The term 'employment' shall not include:

"(a) Services performed in the employ of the owner or tenant operating a farm, in connection with the cultivation of the soil, the harvesting of crops, or the raising, feeding, or management of livestock, bees, or poultry or in connection with the processing, packing or marketing of the produce of such farm as an incident to ordinary farming operations."

From the evidence taken before the Commission it appears that the plaintiffs occupy a six-acre tract adjoining the city of Stillwater, and are engaged in the general hatchery business; that they buy eggs from farmers, incubate and hatch such eggs and sell or offer the chickens for sale when they are one day old. Most of them are sold at this age. Such as they are unable to sell within six weeks are sold as fryers. A few are held for two months and sold as "starter chicks." For the years 1945, 1946, and 1947, they sold approximately two million chickens per year. Before purchasing the eggs they check the supply flocks of the parties of whom they purchase the eggs. They candle and grade the eggs purchased, and then put the eggs in the incubators. They employ a minimum number of five or six employees, and ordinarily in excess of eight. They also sell feed for chickens, and on occasion permit farmers to bring their eggs to the incubator and hatch their eggs for them. Unless the hatchery can be classed as a farming operation, which plaintiffs insist it is, no farming operations are conducted on the six-acre tract, which is occupied by the incubator buildings and a residence.

Plaintiffs contend that the Employment Security Commission and the district court erred in holding that their employees were not within the exemption above quoted. Their position is that the business of hatching poultry is an agricultural operation, so that the six-acre tract is a farm and the employees are employees of the owner operating the farm in connection with the raising of poultry. We are unable to agree with this contention.

As originally passed, both the Federal Social Security Act and the State Employment Compensation Act exempted from the operation of the Act "agricultural labor". However, in 1939, the Federal Act was amended, 26 U.S.C.A., Internal Revenue Code, §1426, by which amendment agricultural labor was defined. By that definition the term "agricultural labor," as contained in the exempting clause in the federal law, was held to exclude from the operation of the act services on a farm in the employ of any person in connection with raising or harvesting of any agricultural or horticultural commodity, and the raising of, caring for, treating and management of livestock, bees, poultry, etc. By paragraph No. 3, sub-

section (h), of the amendment, services in connection with the hatching of poultry were specifically exempted. Following this Act, in 1941, our Legislature passed what was in effect a new act, or general revision of the original 1936 Act, and in this revision, in lieu of the general exemption of those engaged in agricultural labor, exempted those who came within the provisions of the above-quoted subdivision. This, in effect, exempted the classes of agricultural labor performed on a farm as specified in the first subdivision of the federal amendment above referred to, but made the exemption applicable only when those services were performed while in the employ of the owner or tenant operating a farm, whereas, the Federal Act exempted employees who performed such services on a farm in the employ of any person.

Examination of the cases chiefly relied upon by plaintiffs, such as Birmingham v. Rucker's Breeding Farm, 152 F. 2d 837; Miller Hatcheries v. Boyer, 131 F. 2d 283; Stromberg Hatchery v. Iowa Employment Security Comm., 239 Iowa 1047, 33 N.W. 499, and other similar cases, discloses that those cases involved the construction of laws which exempted from the act those employed in agricultural labor, or those which specifically exempted from the operation of the act employment in connection with the hatching of poultry, such as the amended Federal Act above referred to, and state acts thereafter passed containing this specific exemption. In cases not involving the construction of the broad and all-inclusive term "agricultural labor", or acts specifically exempting the employment in question, the courts based their decisions upon the particular facts of each case, from which they concluded that the services were, or were not, performed in the operation of farms. Thus, in Great Western Mushroom Co. v. Industrial Commission, 103 Colo. 39, 82 P. 2d 751, the court held that a corporation engaged in raising mushroom plants, carried on as an independent business and not as an incident to ordinary farming operations, was not exempted from the payment of unemployment contributions, since the operation of such business was not agricultural labor performed on a farm in the ordinarily accepted sense of the word, such as was intended by the Legislature to be exempt. Later, in Industrial Commission v. United Fruit Growers Ass'n, 106 Colo. 223, 103 P. 2d 15, the Colorado Supreme Court held that labor performed for an agricultural co-operative association composed of farmers, acting together for their mutual benefit, which prepared for the market the fruit crops of its members, remitting the proceeds of the sale thereof to the various farmers who were members of the association, was in essence labor performed for the farmers, and was agricultural labor, and that the association was therefore not subject to contributions under the Colorado act.

In the instant case it is conceded that the employees of plaintiffs are in no sense the employees of the farmers from whom the eggs are purchased, or of the farmers or other persons to whom the chickens are sold when hatched. The business is not operated for the benefit of the farmers, the benefits received by them being incidental and resulting from the examination of their flocks by the employees of the plaintiffs, but the operation is conducted directly for the benefit of plaintiffs, and the profits derived therefrom are retained by them. The six-acre tract occupied by plaintiffs is not used for the conducting of any farming operations, and could not be classified as a farm as the term is ordinarily used and understood, unless we hold that the hatching of chickens in the manner above set out is farming.

It is to be noted that although the Legislature amended or revised our own law subsequent to the date of the federal amendment in 1939, it did not follow the terms of the federal amend-

ment, but greatly restricted and cut down the exemptions provided in the Federal Act, confining services performed in connection with the cultivation of the soil, the harvesting of crops, or the raising, feeding, or management of livestock, bees, or poultry to cases where such services were performed in the employ of the owner or tenant operating a farm, and omitting all specific exemptions set out in the Federal Act. A study of the subdivision above quoted convinces us that the Legislature intended to exempt from the operation of the act only the employees of persons actually operating a farm as that term is commonly understood, and that it did not intend to exempt from the operation of the law employees of a commercial business, which was not a farming operation in any sense of the word, although it involved one necessary element of the raising of poultry. Evidently, Congress, when it enacted the 1939 amendment above referred to, defining the meaning of "agricultural labor", understood that the provision in the act similar to that of our own act above quoted, did not exempt certain classes of employees, and therefore specifically exempted services in connection with the raising or harvesting of mushrooms, services in connection with the ginning of cotton, services in connection with the hatching of poultry, and various other services which might not be included in the raising or harvesting of agricultural or horticultural commodities, or the raising, feeding, and caring for livestock, bees, poultry, etc. This our lawmakers did not see fit to do. Our conclusion is that the employees of plaintiffs do not fall within the exemption.

This conclusion is supported by cases in which the facts to some degree resemble those in the instant case. Thus, in People v. Giesbrecht, 90 Cal. A. 2d 569, 203 P. 2d 101, the court held that the commercial enterprise of baling hay under contract with farmers was not agricultural labor so as to exempt the employees of the hay baling employer from the operation of the act, holding that it was an independent enterprise distinct from the farmer's cultivation of the soil or the harvesting or raising of crops.

In California Employment Commission v. Kovacevich, 27 Cal. 2d 546, 165 P. 2d 917, the court held that a fruit packer who purchased fruit from farmers and who girdled, thinned, and harvested the crops, or a portion thereof, was conducting an independent business disconnected from the growing or farming of said crops, and that the packing house and office employees were not exempt from the operation of the act as agricultural laborers.

In Employment Security Commission v. Arizona Citrus Growers, 61 Ariz. 96, 144 P. 2d 682, the Supreme Court of Arizona held that an incorporated non-profit co-operative marketing association, operating a packing plant in which it graded, sorted, cleaned, wrapped and prepared fresh citrus fruits for market, was not exempt from the operation of the Arizona act, since the work was not agricultural labor, as defined in the Commission's regulations, unless performed by the employees of the owner or tenant of the farm at which the raw materials were produced. In that case the court pointed out that the Colorado Supreme Court, in holding, in Industrial Commission v. United Fruit Growers Ass'n, supra, that somewhat similar regulations of their Employment Security Commission exempted employees of co-operative associations as being agricultural laborers, was doubtless influenced by other statutory provisions as to co-operatives.

It is reasonably apparent that our Legislature, in exempting only the employees of owners or tenants of farms, confined the exemption to much narrower limits than those contained in the Federal Act, and that it did not intend to exempt from the operation of the act the employees of an inde-

pendent commercial business engaged in solely for the profit of the owners, although the services performed for the employer, if performed on a farm by the employees of the owner or renter thereof, as a part of his farming operations, might be exempt under the provisions of our law. We say "might be" advisedly, since that question is not presented in this case, and we do not express any opinion thereon.

Plaintiffs assert that even if they are required to contribute to the unemployment fund of the state, their employees will not be able to collect unemployment compensation because they are not under the Social Security Act of the United States, and are not required to obtain or carry social security. We find nothing in the present law which makes such a requirement a condition precedent to obtaining unemployment compensation under the state law. The relation between the federal act and the state act is set forth at some length in Gibson Products Co. v. Murphy, 186 Okla. 714, 100 P. 2d 453, and therefrom it does not appear that either the federal or state law limits the payment of unemployment compensation only to those who come within the provisions of the federal act. The attorneys for the Commission insist that there is no such requirement. No authorities are cited by plaintiff in support of this contention, and no statutory provision making such requirement is pointed out. We conclude that this contention is without merit.

Affirmed.