No. 19,711.

ALFRED C. RUPP *v.* JOHN O. HILL.
(367 P. [2d] 746)

Decided December 29, 1961.  Rehearing denied January 22, 1962.

Messrs. RECTOR and KANE, for plaintiff in error.

Mr. ROBERT W. JOHNSON, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE FRANTZ.

THIS is a controversy between co-tenants of property. Rupp and Hill owned as tenants in common approximately 800 acres of improved ranch land and equipment to operate it. In April 1959 the tenant of the persons

from whom Rupp and Hill purchased the property removed from the premises and Rupp and his family took possession.

On October 1, 1959, the co-tenants entered into an agreement with a Mrs. Shea, under the terms of which she was to purchase a portion of the ranch. Sometime thereafter difficulties arose between Rupp and Hill in connection with the Shea contract, Rupp in effect refusing to go through with the deal. He believed the transaction to have no binding force, but the nature of his contention in this regard does not appear in the record.

The difficulties between Rupp and Hill got to the point where each offered to buy the other's interest. There is no dispute that Hill offered to sell his undivided one-half of realty and equipment to Rupp for what it cost him, with interest thereon of 10%. Hill testified also that his offer was conditioned upon his being released from any liability for failure to honor the Shea contract. According to Hill, the offer was to remain open for "ten days or three weeks at the outside." He testified that Rupp never notified him of an acceptance of the offer.

Rupp and his wife testified that an offer to sell for his investment plus 10% was made by Hill, and that Rupp accepted the offer. They also testified that Hill agreed to supply them with the amount of his investment, and that it was agreed between Rupp and Hill that when the amount was determined, a written agreement would be drawn evidencing their pact. Further, they stated that they called for the figures but never obtained them from Hill.

The Rupp family continued in possession of the ranch. They made some minor improvements and repaired parts of the property. The Hills never returned to the residence of the Rupps. A key to a cabin located about a quarter mile from the ranch house was available to both the Hills and the Rupps. Some furnishings belonging to the Hills were in the cabin up to the day of trial.

Suit in partition was instituted by Hill on December

14, 1959. By stipulation it was agreed that the property could not feasibly be partitioned between Hill and Rupp; that it should be sold en masse under court direction if a decree in partition was warranted by the facts. It was further stipulated that a release from any liability to Shea had been delivered to Hill, but when or under what circumstances remains equivocal.

. Rupp relies upon the alleged agreement that was to be reduced to writing as soon as the amount of Hill's investment was given him. In his pleadings Rupp seeks an order to require Hill to perform the agreement, and tenders therewith whatever amount is found to represent Hill's investment and additionally 10% thereof.

After finding that the property should be sold en bloc, the trial court further found:

"IV.

"That in Mid November, 1959, the Plaintiff and Defendant had a discussion with reference to the sale by the Plaintiff and the purchase by the Defendant of all of the interest of the Plaintiff in and to said Real Property and the personal property located thereon owned jointly by the parties to this action and the Court finds that such negotiations, if consummated, would have resulted in a sale by the Plaintiff of his interest in said real Estate and the personal property located therein, which personal property has an agreed value in excess of $50.00, and that no note or memorandum expressing the consideration was made and subscribed to by the Plaintiff to this action as a result of said discussions nor was there any partial performance or payment on account thereof. The Court further expressly finds that the negotations of the parties if consummated would not have resulted in a partition of said property between the parties hereto but would have resulted in a sale by the Plaintiff to the Defendant of his interest in such property.

"V.

"The Court finds that because of the Courts other find-

ings and Conclusions of Law, it is not necessary to make any Findings as to whether or not the negotiations between the parties to this action in Mid November of 1959 resulted in a verbal contract for the sale by the Plaintiff to the Defendant of said premises and the personal property located therein. Such agreement for the sale of Real Property and personal property having a value in excess of $50.00 is required by the provisions of Chapter 59, Article 1, Sections 8 and 12 of the 1953 Colorado Revised Statutes to be in writing and signed by the person charged with conveying the property, otherwise it is void, unless it falls within one of the exceptions to the statutory requirement, which the Court finds it does not."

In accordance with its findings the trial court entered a decree directing that the property be sold, and therein set forth the guides for the conduct of the sale and the delivery of a deed. Believing the decree to be founded in error, Rupp is here, seeking reversal.

Was there a parol agreement between Hill and Rupp? Here was a fact question as to the existence of a contract arising from a dispute concerning acceptance, *Mulligan v. Smith*, 32 Colo. 404, 76 Pac. 1063; and the response to this question goes to the very heart of this case. The trial court by-passed the question, and yet a negative answer would have concluded the case, while an affirmative answer would have required the solution of additional problems. Regarding these additional problems, we dissertate.

1. Is a parol agreement to reduce to writing a contract which is within the statute of frauds enforceable? Admittedly, there are two diametrically opposed views on the problem, with a substantial majority of the authorities holding that such an agreement is not enforceable. Antinomy is founded on philosophical differences arising from a disposition either to limit the statute of frauds to a literal, thus narrow, application, or to extend

the statute to give heed to its intent and spirit. Colorado has not declared itself on the matter.

The pertinent section of the statute provides:

"Every contract for the leasing for a longer period than one year, or for the sale of any lands or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof, expressing the consideration, be in writing, and be subscribed by the party by whom the lease or sale is to be made." C.R.S. '53, 59-1-8.

Lord Keeper North, one of the authors of the original English statute, five years after its enactment, specifically enforced oral contracts when the parties had agreed to reduce them to writing. *Leak v. Morrice,* 2 Ch. Cas. 135, 22 Eng. Rep. 883 (1682); *Hollis v. Whiteing,* 1 Vern. 151, 23 Eng. Rep. 380 (1682). "This remained the law for over one hundred years." "Agreements to Reduce to Writing Contracts within the Statute of Frauds," McNeill, 15 Va. L. Rev. 553.

Over the years there has developed an adverse attitude toward the statute, begotten by the belief that it perpetrates more injustice than it prevents. Courts and textwriters have, as a consequence, advocated its repeal. And courts have been quick to grasp circumstances which they hold remove cases from the operation of the statute. 2 Corbin on Contracts 2, § 275.

But on the simple question now being considered, the vast majority of cases hold that a parol agreement to reduce to writing a contract which is within the statute of frauds is unenforceable. "A contract that is unenforceable by reason of the statute cannot be made *indirectly* enforceable by promising to execute a sufficient memorandum or otherwise to satisfy the requirements of the statute." 2 Corbin on Contracts 31, § 283.

To hold the parol agreement enforceable would offend the spirit and purpose of the statute. *Ledford v. Ferrell,* 34 N.C. 285. It is not unusual for an act to be without the letter of a statute, and yet to be within its spirit and legislative intent, and when the latter appears, it be-

comes the dominant factor in construing the statute. *Bedford v. People,* 105 Colo. 312, 98 P. (2d) 474; *Great Western, etc., Co. v. Industrial Commission,* 103 Colo. 39, 82 P. (2d) 751.

In a consideration of the reasoning of the decisions and texts, this court aligns itself with those authorities which hold that such parol agreement standing alone is unenforceable.

2. If there was a parol agreement, does possession of the property by Rupp and his family make inapplicable the statute of frauds? It depends upon whether such possession is referable to the agreement.

■ Actual possession in furtherance of an oral contract may be made the foundation for a decree of specific performance, but such possession must be referable to the contract. *Von Trotha v. Bamberger,* 15 Colo. 1, 24 Pac. 883; 3 American Law of Property 31, § 11.8. Whether possession is referable to the contract rests upon circumstances, and should be resolved by the trier of the facts. See *Bushner v. Bushner,* 134 Colo. 509, 307 P. (2d) 204.

3. Was there a part performance of a parol agreement? If the trial court would find that a parol agreement was made, it would then be incumbent upon it to consider the evidence for the purpose of determining whether the facts showed partial performance.

■ Part performance of an oral agreement to convey an interest in land will remove it from the operation of the statute of frauds. *Park v. Park,* 45 Colo. 347, 101 Pac. 403; *Estate of Doerfer,* 100 Colo. 304, 67 P. (2d) 492.

The trial court did not consider Rupp's possession in terms of being referable to the alleged contract; neither did it take into account the effect of Shea's release of claim against Hill in connection with possession and the expenditure of money for minor improvements and repairs as these acts may show part performance on the part of Rupp. Statute of Frauds, 37 C.J.S. 763 et seq., § 252.

The judgment is reversed with directions to grant a new trial to be conducted in manner consistent with the views herein expressed.

MR. JUSTICE SUTTON and MR. JUSTICE MCWILLIAMS concur.