STATE of Oklahoma ex rel. OKLAHOMA EMPLOYMENT SECURITY COM-MISSION, Appellant,

v.

BOISE CITY FEED YARDS, INC., an Oklahoma corporation, Appellee.

STATE of Oklahoma ex rel. OKLAHOMA EMPLOYMENT SECURITY COM-MISSION, Appellant,

v.

PANHANDLE FEED YARDS, INC., an Oklahoma corporation, Appellee.

STATE of Oklahoma ex rel. OKLAHOMA EMPLOYMENT SECURITY COM-MISSION, Appellant,

v.

TEXAS COUNTY FEED YARDS, INC., an Oklahoma corporation, Appellee.

Nos. 44919–44921.

Supreme Court of Oklahoma.

Dec. 4, 1973.

Milton R. Elliott, Chief Atty., Okl. Employment Security Comm'n, Oklahoma City, for appellant.

Frank E. Hensley, Guymon, for Texas County Feed Yards, Inc.

Frank Ogden, Ogden, Ogden & Board, Guymon, for Boise City Feed Yards, Inc.

Larry Field, LaMar, Tryon, Sweet, Field & Petty, Guymon, for Panhandle Feed Yards, Inc.

SIMMS, Justice:

The Oklahoma Employment Security Commission assessed Boise City Feed Yards, Inc., Cimarron County; Texas County Feed Yards, Inc., Texas County; and, Panhandle Feed Yards, Inc., Beaver County; for unemployment tax contributions. After a hearing before the Assessment Board, the Commission upheld the assessment. The Feed Yards each filed appeals in the District Court of their respective counties.

The case before this Court is a consolidation of the three appeals from judgments rendered in each of the District Courts in favor of the Feed Lots, holding the Feed Lots exempt from payment of unemployment tax contributions.

The question presented is whether the Feed Lot operations under consideration

come within the exemption stated in 40 O. S.1971, § 229, subd.(f)(6)(a):

"(6) The term 'employment' shall not include:

(a) Services performed in the employ of the owner or tenant operating a farm, in connection with the cultivation of the soil, the harvesting of crops, or the raising, feeding, or management of livestock, poultry, bees, furbearing animals and wildlife, nurseries, or greenhouses or in connection with the processing, packing or marketing of produce of such farms, nurseries or greenhouses and as an incident to such agricultural operations, as herein mentioned."

The Feed Lots admit they are covered under the Act and liable to make unemployment tax contributions unless the feed lot operations come within the farm exemption.

The evidence shows without conflict that each of the three Feed Lots were incorporated as stock-profit corporations under the Oklahoma Business Corporation Act. It was stipulated that none of the Feed Lots own any cattle, but merely feed and service, to fatten and finish, the cattle owned by their customers. Each of the Feed Lots own the land on which the lots are located. Boise City has a capacity to feed and service 6,000 head of cattle. Panhandle can take care of 18,000 head. Texas County can handle over 20,000 head. The Feed Lots also have their own individual feed mills for grinding and mixing grains.

The method of operating the Feed Lots is as follows. The cattle owner places his cattle in the feed lots. The cattle are put into identified pens and kept separate from the cattle of other customers. The Feed Lot employees feed the cattle such rations as the cattle owner directs. The risk of loss, including shrinkage, remains on the cattle owner, and the Feed Lots do not warrant that the cattle will increase in weight. Boise City charges its customers $7.00 per ton for feed to the cattle. Texas

County Feed Yards and Panhandle Feed Yards charge fifty cents per day per head of cattle plus feed. If any of the cattle become sick, a veterinarian is called by the feed lot operator. The feed lot operator bills the owner for the cost of the veterinary charge.

The customer retains ownership at all times during the feed lot operations, and may examine and remove them at will. The customers of the Feed Lots are primarily farmers or ranchers, but a few are business and professional persons.

The employees who take care of the cattle are employees of the respective Feed Lots. They are paid by and subject to the direction of the Feed Lots. The employees are hired and fired, by the Feed Lots.

The Feed Lots insist that the above described feed lot operations are properly classed as farm or agricultural operations within the exemption heretofore set forth.

The only Oklahoma case dealing with the farm exemption under 40 O.S.1971, § 229, subd. (f), (6), is Wilson v. Oklahoma Employment Security Commission, 204 Okl. 501, 231 P.2d 664 (1951). In the *Wilson* case, a hatchery was claiming a farm exemption from unemployment taxes. The hatchery was located on the six acre tract it owned. The business bought eggs from farmers, incubated and hatched the eggs and sold the chickens. The position of the hatchery in *Wilson, supra,* is the same as the position of the Feed Lots in the instant case:

"Their position is that the business of hatching poultry is an agricultural operation, so that the six acre tract is a farm and the employees are employees of the owner operating the farm in connection with the raising of poultry." 231 P.2d, at 665.

This Court disagreed with the contention of the hatchery in the *Wilson* case, basing its reasoning on an analysis of the Exemption Statute as compared to the Federal Social Security Act which contains a similar exemption for agricultural labor. The Social Security Act "was held to exclude

from the operation of the Act, services on a farm *in the employ of any person* in connection with raising or harvesting of any agricultural or horticultural commodity and the raising or caring for, treating and managing livestock, bees, poultry, etc. . . . " (emphasis added) Subsequent to the enactment of the Social Security exemption as set forth above, Oklahoma narrowed its farm exemptions and "made the exemption applicable only when these services were performed while in the employ of the owner or tenant operating a farm, whereas the Federal Act exempted employees who performed such services on a farm in the employ of any person."

This Court further interpreted the farm exemption as follows:

"A study of the subdivision above quoted convinces us that the legislature intended to exempt from the operation of the act only the employees of persons actually operating a farm as that term is commonly understood, and that it did not intend to exempt from the operation of the law employees of a commercial business, which was not a farming operation in any sense of the word, although it involved one necessary element of the raising of poultry." Wilson, supra, at 666.

The Feed Lots correctly point out that the facts of the *Wilson* case differ from the facts in the instant case. In *Wilson,* the hatchery bought the eggs from the farmers, hatched them, and then sold them to be raised. The farmers did not retain ownership of the eggs or chicks. We are unable to agree, however, that the method of operating the Feed Lots make them any less commercial than the Hatchery business. The exemption clearly requires the services to be performed *"in the employ of the owner or tenant operating a farm."* The owners of the Feed Lots are its shareholders. This Court cited People v. Giesbrecht, 90 Cal.App.2d 569, 203 P.2d 101, in Wilson v. Oklahoma Employment Security Commission, *supra:*

" . . . the court held that the commercial enterprise of baling hay under contract with farmers was not agricultural labor so as to exempt the employees of the hay baling employer from the operation of the act, holding that it was an independent enterprise distinct from the farmer's cultivation of the soil or the harvesting or raising of crops." Wilson, supra, at 667.

The Feed Lots assert the test to be applied is one the Ninth Circuit Court of Appeals applied in a case involving the construction of the Social Security agricultural exemption. Miller v. Burger, 161 F.2d 992 (9th Cir. 1947). The Feed Lots argue a four-fold test to determine whether the labor performed is pursuant to an agricultural operation: "(1) The farmer or rancher has not parted with the economic interest in the product; (2) The enterprise is of a service performed; (3) The grower retains the ownership in the product; and, (4) The business conducted is not the terminal market." We conclude that this test is inapplicable to the Oklahoma farm exemption. If that test were applied to the *Giesbrecht* case, an independent contractor doing hay baling for a farmer would be exempt from paying unemployment compensation for his employees. Stockyard companies which pen and feed cattle for the owners before the livestock is sold would be exempt under the test cited by the Feed Lots. Livery stables which feed and stable livestock for a fee would be exempt. Even veterinarians who treat and feed cattle meet the liberal test set forth by the Feed Lots. We do not believe the legislature intended such a construction to be placed on the Oklahoma farm exemption.

The type of operation engaged in by the Feed Lots is not normally considered to be a farm as that term is normally understood. The Feed Lots are engaged in a commercial enterprise. For cases where commercial feed lots with methods of operation like the Feed Lots in the instant case were held to be commercial enterprises by courts in Texas and Colorado, see Texas Employers' Insurance Association v. Der-

rick, 207 S.W.2d 199 (Tex.Civ.App.1947); Weed v. Monfort Feed Lots, Inc., 156 Colo. 577, 402 P.2d 177 (Colo.1964).

We therefore hold that the Feed Lots are liable for the payment of the unemployment tax.

Reversed.

All the Justices concur.