WORLD OF SLEEP, INC., a Colorado corporation, Plaintiff-Appellee,

v.

Zel SEIDENFELD, Defendant-Appellant.

No. 83CA0077.

Colorado Court of Appeals, Div. II.

Dec. 8, 1983.

Grant, McHendrie, Haines & Crouse, John D. Dahle, Denver, for plaintiff-appellee.

Burg & Aspinwall, P.C., David C. Aspinwall, Denver, for defendant-appellant.

VAN CISE, Judge.

In this action, judgment was entered against defendant, Zel Seidenfeld, as personal guarantor of a promissory note and of a sublease agreement. He appeals. We affirm.

After several weeks of discussions with officers and directors of plaintiff, World of Sleep, Inc., defendant incorporated Colorado Sleepmasters, Inc. (Sleepmasters), in order to conduct a business, as plaintiff's licensee, for the retail sale of bedding and related products at certain premises in Littleton. In October 1979, Sleepmasters, which had no working capital, obtained certain assets from plaintiff, including an ini-

tial merchandise inventory, and, in return, executed its installment note in plaintiff's favor in the principal amount of $40,000. At the same time, Sleepmasters subleased the subject premises from plaintiff. The sublease and installment note were executed by Sleepmasters through its president, Zel Seidenfeld.

Sleepmasters commenced the retail operation shortly after these and other documents relating to the business arrangement were finalized.

In January 1981, after reviewing Sleepmasters' books, plaintiff became concerned about Sleepmasters' solvency. As a result, and to allow plaintiff to monitor Sleepmasters' financial activities, plaintiff acquired Sleepmasters' books, records, and checkbook from defendant. Sleepmasters' checks were thereafter physically issued by plaintiff and were required to be signed by both plaintiff and Sleepmasters.

The evidence indicated that Sleepmasters experienced financial difficulties over the next several months. No payments were made on the installment note after March 1981, leaving a principal balance of $26,000. Sleepmasters ceased operating the store in February 1982. At that time, Sleepmasters was $26,980 in arrears under its sublease with plaintiff and, at the time of trial, this amount remained unpaid.

On conflicting evidence, the trial court found that during the discussions held prior to preparation of the documents related to their business arrangement, the parties had orally agreed that defendant would provide his personal written guarantee of the payments due from Sleepmasters under both the note and sublease, and that these guarantees would appear on the sublease and note documents. The trial court further found that, consistent with the agreement of the parties, plaintiff believed that defendant's signed guarantee of the note did appear on the note. The court found, however, that plaintiff's belief was a unilateral mistake, and that plaintiff discovered later that the bottom of the note document, as executed, in fact contained a guarantee referring to the sublease only. The court

additionally found that at the time that he signed the guarantee contained at the bottom of the note, defendant was aware of this mistake on the part of plaintiff and failed to call it to the attention of plaintiff.

Based upon these findings, the court reformed the installment note, as had been requested by plaintiff, to include defendant's personal guarantee thereof. Finding against defendant on his affirmative defenses, which included waiver and the statute of frauds, the court then entered judgment against him, as guarantor, for the unpaid balance of the reformed note and for past due rent.

## I.

In this appeal, defendant initially contends that the trial court erred in reforming the note to include his personal guarantee thereof. In support of his contention, defendant argues that any agreement to guarantee the note, which is a separate obligation from the note proper, was never reduced to writing and, therefore, that no written instrument capable of reformation existed. We disagree.

■ The trial court found, on supporting evidence, that the parties had expressly agreed that the note would contain defendant's personal guarantee. *Cf. A.R.A. Manufacturing Co. v. Cohen,* 654 P.2d 857 (Colo. App.1982). The note as finally prepared and executed contained a personal guarantee signed by defendant. However, it referred to the sublease and not the note, and, therefore, that guarantee was an inaccurate rendition of the parties' prior agreement. Nonetheless, the document of which it was a part was the attempted memorialization of the parties' agreement, and, thus, as the trial court properly concluded, it constituted the written instrument appropriately subject to reformation.

Because that guarantee did not describe the note, we also disagree with defendant's argument that there was no variance between the written instrument and the parties' prior agreement. Similarly, since defendant personally signed that guarantee,

we reject his related assertion that the reformation has impermissibly created liability in him because he was not a party to the unreformed instrument.

Defendant further argues that the reformation gives effect to an oral agreement to answer for the debt of another person and, therefore, violates the statute of frauds. Again, we disagree.

■ As defendant correctly points out, because a personal guarantee is a special promise to answer for the debt of another person, it is within the statute of frauds and, in order to be enforceable, must generally be evidenced by a writing. Section 38–10–112(1)(b), C.R.S.1973; *Cramblit v. Chateau Motel, Inc.,* 28 Colo.App. 213, 472 P.2d 183 (1970). In addition, an oral promise, standing alone, to reduce to writing a contract that is within the statute of frauds is itself within the statute of frauds and, hence, its enforcement is also generally precluded in the absence of a writing. *Rupp v. Hill,* 149 Colo. 48, 367 P.2d 746 (1961); *Restatement (Second) of Contracts* § 117 (1981).

In this case, however, plaintiff did not seek to enforce an oral guarantee. Neither did plaintiff seek to enforce an oral promise, standing alone, to reduce a guarantee to writing. Instead, plaintiff sought to reform an existing written instrument containing a signed guarantee that misdescribed the parties' oral agreement, and then to enforce the writing as reformed. *See* Palmer, *Reformation & the Statute of Frauds,* 65 *Mich.L.Rev.* 421 (1967).

■ We hold that where, as here, reformation is sought and is otherwise appropriate, it is not precluded by the fact that the contract is within the statute of frauds. *See Restatement (Second) of Contracts* §§ 156 and 166 comment c (1981). In so holding, we are aware that reformation of the writing will require proof of the parties' antecedent oral agreement used as the basis of correction. *See 2 A. Corbin, Contracts* §§ 335, 336 (1950). However, the remedy of reformation is premised on the assumption that a written instrument does exist which would have accurately described such a prior agreement, but for the bad faith of one party or the mistake of both. *See Segelke v. Kilmer,* 145 Colo. 538, 360 P.2d 423 (1961); *Jackson Enterprises, Inc. v. Maguire,* 144 Colo. 164, 355 P.2d 540 (1960).

■ A court may grant reformation only where the evidence shows that the written instrument does not express the parties' true agreement. *Atchison v. City of Englewood,* 193 Colo. 367, 568 P.2d 13 (1977). Thus, we are satisfied that adequate safeguards exist in a reformation action so as to prevent a court from creating an agreement where none exists. *See Restatement (Second) of Contracts* § 156, (1981) (Reporter's Note). And, in light of the rationale for the remedy, interposing the statute of frauds as a bar to reformation would, in our view, serve to promote rather than prevent commission of fraud between the parties. *See 2 A. Corbin, Contracts,* § 338 (1950); *S. Williston, Contracts* § 1552A (W. Jaeger 3rd ed. 1970).

## II.

■ We also disagree with defendant's further contention that the trial court erred in finding that the conduct of plaintiff in not preparing and co-signing checks on the Sleepmaster bank account payable to plaintiff as rent and note payments came due did not constitute waivers of its rights to receive such payments. For a waiver, there must be not only knowledge of the existence of a right but also intention to relinquish the right. *People ex rel. Metzger v. Watrous,* 121 Colo. 282, 215 P.2d 344 (1950); *French v. Patriotic Insurance Co.,* 107 Colo. 275, 111 P.2d 893 (1941). The facts in this case, and the inferences to be drawn therefrom, fall far short of showing any such intent.

Judgment affirmed.

SMITH and KELLY, JJ., concur.